IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| PAMELA RICHTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-3023-CV-S-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in January 1951, completed two years of college, and has prior work experience as a cashier, receptionist, and billing clerk. She alleges she became disabled on November 30, 2008, due to a combination of asthma, neuropathy, depression, and anxiety. The ALJ found Plaintiff's depression and anxiety were not severe because they did not impose more than mild limitations; Plaintiff does not challenge this finding so the Court's summary of the evidence will focus Plaintiff's other ailments.

In January 2008 – approximately ten months before her alleged onset date – Plaintiff went to the Ferrell-Duncan Clinic complaining of neck pain, weekly headaches, and accompanying nausea. X-rays were negative. R. at 265-69. An MRI was performed in February and revealed normal signal intensity and normal alignment, bone spurs at C4-5, Ct-7, C7-T1, narrowing at C5-6, but no nerve root impingement. The

assessment was "cervical spondylosis, most pronounced at the C5-C6 level where there is asymmetric moderate narrowing of the right neural foramina." R. at 263-64, 309.

In June 2008, Plaintiff returned to Ferrell-Duncan complaining of pain in her left (non-dominant, R. at 39) hand caused by accidentally hitting it with a hammer, as well as pain and stiffness in her left knee for the previous two to three weeks. She denied, however that the knee "gives out or locks up on her." X-rays of her hand revealed "minimal osteoarthritic changes" in her second and third fingers, but no fractures or dislocations. While the doctor's notes indicate an MRI of Plaintiff's knee was to be arranged, there does not appear to be a record from such a procedure. R. at 259-62.

In March 2009, Plaintiff complained of twitching in her left eye and numbness and spasms in her left leg. She demonstrated normal strength and mobility. An MRI of her brain was unremarkable, and in April 2009 she told a neurologist at Ferrell-Duncan that her legs were better with medication and denied that leg pain was the reason for her visit. (The visit was related to the continued twitching in her eye). Subsequent MRIs of her brain were also unremarkable, and an MRI of her pelvis and leg was also negative, ruling out abnormalities in the femoral nerve or the presence of neuroma. However, a nerve conduction study indicated left femoral neuropathy. R. at 228-40.

In October 2009, Plaintiff underwent a consultative examination performed by Dr. Jennifer Zhai. Dr. Zhai's examination yielded largely normal results in terms of Plaintiff's strength and range of motion. She indicated Plaintiff appeared to suffer from "left meralgia parestetica," which is a condition characterized by tingling, numbness and pain in the outer part of the thigh.[1] Dr. Zhai also opined that Pliantiff "does not have any motor deficit, she only has subjective pain and sensory deficit. Therefore, she should not have any difficulty to perform [tasks] which require walking, standing, sitting, handling, hearing or speaking," but because of pain in her leg she might experience difficulty lifting or carrying objects that weigh more than thirty pounds. R. at 318-23.

Plaintiff changed doctors and began going to the Webster County Clinic. At her

---

[1] The Court obtained this explanation from a website maintained by the Mayo Clinic. The web address is: http://www.mayoclinic.com/health/meralgia-paresthetica/DS00914

2

first visit in January 2010, Plaintiff did not report any problems with her back or legs, nor did she indicate she had any problems sitting or standing. R. at 344-47.

In January 2010 Plaintiff also received treatment from Dr. Robert Hufft (an orthopedist) at Cox Hospital for a broken wrist (right) and a jammed shoulder she experienced after accidentally tripping on a sidewalk sometime around Christmas 2009. R. at 364-65. In February, Dr. Hufft referred Plaintiff to an occupational therapist and discharged her from his care. R. at 365. Plaintiff told the occupational therapist that she had been able to function independently with no difficulties in any aspects of daily living, but due to pain and stiffness in her hand she was now finding it difficult to perform such functions or to complete the writing and typing that was part of her job selling real estate. A therapy plan was instituted. R. at 435-39. In March, the therapist contacted Dr. Hufft and reported Plaintiff had "significant swelling in her right hand." He prescribed a steroid and told the therapist to have Plaintiff make an appointment. R. at 366. At that appointment, Plaintiff complained of swelling in her right wrist and pain in her right shoulder, hand and wrist. The steroid had provided "a good response" for her hand, but not for her shoulder. Dr. Hufft noted Plaintiff did not have a history of shoulder problems and the x-rays from January were normal. Plaintiff exhibited slightly restricted range of motion. Dr. Hufft recommended Plaintiff continue with the occupational therapist and consider returning for an injection. R. at 366-67. On April 20, Plaintiff reported significant improvement in her shoulder to her therapist. R. at 391.

Meanwhile, in March 2011, Plaintiff went to the Ferrell-Duncan Clinic, where it was reported that Plaintiff was experiencing "pain from femoral neuropathy that is not responding to current regimen." She obtained a Lidoderm patch for the pain in her legs, and her previous prescription for oxcarabazepine was also increased. R. at 349-50.

During the hearing Plaintiff testified she has pain in her leg 80% of the time and that sitting or standing for too long makes it hurt (although she did not directly respond to questions asking how long she could sit or stand). R. at 36-38. Her broken wrist exacerbated an arthritic condition, which makes it difficult for her to hold anything in her hands. R. at 39. The pain causes difficulty sleeping, and in the combination of pain and lack of sleep makes concentration difficult. R. at 39. With respect to daily activities, Plaintiff testified that she drives approximately 100 miles per week. Some of that driving

3

is in connection with her activities selling real estate.  She shops, prepares meals, does the laundry, and performs other household chores.  She also mows the lawn during the summer, using a riding lawnmower for this task.  R. at 46-47.  As a hobby, she is involved with the Ms. Springfield Pageant.  Plaintiff was not specific when asked what is involved in this activity, although she is one of four directors and attends monthly meetings.  R. at 47-49.

The ALJ elicited testimony from a vocational expert ("VE").  The VE was asked to assume a person for Plaintiff's age, education and experience who was limited in the manner Plaintiff described in her testimony; the VE testified such a person could not sustain full-time competitive employment.  R. at 52.  The hypothetical was then changed to reflect a person who could stand or walk six hours a day and two hours at a time, sit six hours a day and two hours at a time, lift twenty pounds occasionally and ten pounds frequently; the VE testified such a person could return to their past work as a cashier, receptionist, or billing clerk.  The third hypothetical limited the claimant to occasional gripping and handling of objects.  The VE testified such a person could not perform their past work.  The fourth hypothetical removed the limitation on gripping and handling, but further limited the ability to stand or walk to thirty minutes at a time.  The VE testified such a person could work as a billing clerk.  R. at 52-54.

The ALJ found Plaintiff's residual functional capacity ("RFC") was consistent with the second hypothetical and, based on the VE's testimony, that Plaintiff could return to her past relevant work.  In reaching this conclusion, the ALJ noted the absence of objective medical data, inconsistencies between Plaintiff's activities and her claimed disabilities, and inconsistencies between Plaintiff's statements to doctors and other treating professionals and her testimony.  R. at 12-16.

## II.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some

4

evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

Plaintiff's arguments are related: she contends the ALJ did not properly evaluate her credibility and did not properly ascertain her RFC.  The Court disagrees.

Plaintiff faults the ALJ for not including any "mental or psychological limitations" or any "limitations reflecting [Plaintiff's] difficulties with her hands, wrists, and shoulders" in Plaintiff's RFC.  Plaintiff's Brief at 15.  However, the RFC includes only those restrictions found to exist, and Plaintiff does not explain why the ALJ's finding that Plaintiff's depression and anxiety did not impose more than mild limitations was incorrect.

Similarly, the ALJ considered the appropriate factors in assessing Plaintiff's reports of pain in her hand and shoulder.  The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences.  House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced.  The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the

5

> testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> > 1. The claimant's daily activities;
> > 2. the duration, frequency and intensity of the pain
> > 3. precipitating and aggravating factors;
> > 4. dosage, effectiveness and side effects of medication;
> > 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322. The ALJ considered appropriate factors, noting that her testimony about her daily activities was inconsistent with her claimed limitations. In addition, Plaintiff reported to her therapist that she was engaging in activities (e.g., raking in the yard, staining the floor in her home, replacing ceiling tiles in her home) that were inconsistent with her claimed disabilities. When discussing her ailments with doctors, Plaintiff did not describe difficulties or limitations as severe as those she now alleges, and doctors' objective findings are inconsistent with the severity she has described.

Plaintiff essentially invites the Court to reach a factual conclusion different from the ALJ's, but this invitation must be declined. Resolving factual matters generally, and resolving issues of credibility specifically, is a task committed to the ALJ. So long as the decision is supported by substantial evidence in the Record as a whole, the ALJ's resolution of those matters must be accepted. E.g., Finch v. Astrue, 547 F.3d 933, 935-36 (8th Cir. 2008).

Finally, Plaintiff contends the ALJ made his own determination of Plaintiff's RFC and insinuates the ALJ should have sought additional information. While "a claimant's RFC is a medical question, . . . in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). It is not required that the RFC can be proved *only* with medical evidence. Dykes v. Apfel, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam). Evidence of Plaintiff's actual

6

Case 6:12-cv-03023-ODS   Document 13   Filed 12/12/12   Page 6 of 7

daily activities and the medical evidence that existed was sufficient to support the ALJ's determination about Plaintiff's capabilities. Plaintiff's suggestion that the ALJ failed to fully develop the Record is rejected. While the ALJ has such a duty, the duty arises only when the Record indicates a condition exists but there is not enough evidence to determine what effect it has on the claimant's abilities. E.g., Byes v. Astrue, 687 F.3d 913, 915-16 (8th Cir. 2012) (citing cases). Here, there was medical evidence from Plaintiff's doctors and consultants, and the evidence was sufficient to support a finding. The fact that the evidence did not support the finding Plaintiff sought does not mean the ALJ failed to develop the Record.

## III. CONCLUSION

The Commissioner's final decision denying benefits is affirmed.
IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: December 12, 2012     UNITED STATES DISTRICT COURT